Rodney Lee, Plaintiff Pro Se
70 Whitford Drive
Burlington NJ 08016
Rodolee33@aol.com
(973) 951-8404 Phone (908) 355-6581 Fax

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2017 JUN -b P 12: 17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Rodney Lee

        Plaintiff,

v.

OneWest Bank, FSB

        Defendant.

Case No.:

**PLAINTIFF'S VERIFIED COMPLAINT**

**TRAIL BY JURY DEMANDED**

**COMES NOW** Plaintiff, Rodney Lee, (hereafter referred as "Plaintiff") allege herein follows:

## JURISDICTION AND VENUE

1. These claims arise under Federal Question Jurisdiction, including but not limited to The Fair Debt Collection Practices Act (FDCPA or "Act 2"), both acts hereinafter referred to collectively as the "Acts") and the law of this State where I live and where defendant(s) does (do) business.

2. This court has both personal and subject matter jurisdiction to hear this case pursuant to 28 USC § 1332.

3. The Plaintiff is a resident of New Jersey and the Defendant is authorized to do business in the State of New Jersey.

4. The amount in controversy exceeds $75,000.

5. Venue lies in this District pursuant to 28§ 1391(b). The issue in the present lawsuit lies within the territorial limits of Burlington County, State of New Jersey.

## PARTIES

6. Plaintiff is resident of the County of Burlington, State of New Jersey and resides at commonly known as: 70 Whitford Drive Burlington, NJ 08016.

7. Through belief, ("Defendant"), OneWest Bank, FSB ("OneWest Bank, FSB"), having its principal place of business at 888 E. Walnut Street, Pasadena, CA, 91101, and authorized to do business in the State of New Jersey.

## ALLEGATIONS

8. Defendant is a "debt collectors" as defined by 15 U.S.C. §1692(6). See, "a true copy Defendant's correspondence dated July 31, 2013 and August 12, 2013 page (2)" attached hereto as exhibit "A".

9. Plaintiffs are "consumer" under the meaning of the FDCA and under the facts alleged.

10. Defendant qualifies as "debt collector" who is attempting to collect a "debt" that arose out of a residential mortgage promissory Note transaction entered into primarily for personal purpose.

11. Plaintiff was subject of collection efforts of Defendant concerning a debt, defined under the meaning and purview of Act 2.

12. Defendant, alone or in concert, joint venture, partnership and/or some other contractual arrangement, violated the Acts as pled herein and as to be discovered, thus causing plaintiff, special, general and punitive

13. Plaintiff brings claim, against Defendant ("OneWest Bank, FSB") for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt by filing a complaint (the "Underlying Litigation"), against Plaintiff ("Mr. Lee") to collect through its counselor Fein, Such, Kahn & Shepard, P.C. ("Attorney") a New Jersey practicing Attorney at Law, a mortgage debt ("the Debt") without serving Plaintiff with a pre-complaint written notice of intention to foreclose that identify **OneWest Bank, FSB** as the "lender" as required by N.J.S.A. 2A:50-56(c)(11), a provision of the Fair Foreclosure Act (the Act). See also, N.J.S.A. 2A:50-53 to -68. Thus, compliance with this notice provision is, in effect, a condition ("OneWest Bank, FSB") a lender must satisfy in order to either "accelerate the maturity of any residential mortgage obligation" or "commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage." N.J.S.A. 2A:50-56(a). Compliance with N.J.S.A. 2A:50-56 shall be set forth in the pleading of any legal action" to foreclosure a residential mortgage. N.J.S.A. 2A:50-56(f).

14. Plaintiff contends that by OneWest Bank, FSB making misleading or deceptive representation in its foreclosure complaint under docket number F-61487-09 in the Chancery Division Essex County Court through its Attorney Ms. Dolores M. Dealmieda in paragraph (10) of the office of Fein, Such, Kahn & Shepard, P.C. dated November 4, 2009 that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" was a violation of 15 U.S.C. 1692d and 1692f resulting in the loss of Plaintiff real personal property at 551 South Orange Avenue at a Sherriff's Sale on August 19, 2014. See "a true copy of the complaint "Underlying Litigation signed by Ms. Dolores M. Dealmieda" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "B".

15. Plaintiff contends that prior to the filing of the Underlying Litigation by Defendant through their Attorney, **OneWest Bank, FSB**, never alleged that it was a "residential mortgage lender" or "lender" as define by N.J.S.A. 2A:50-56(c) in of its motion papers of record under docket number F-61487-09. Therefore, Plaintiff complains that Defendants' Underlying Litigation through their Attorney to Plaintiff violated §1692e(2) and 1692(10) of the FDCPA by making false, deceptive, and/or misleading representation in its Underlying Litigation filed on November 23, 2009 notice to Plaintiff that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" as further attempt to collect the debt. See "a true copy of the complaint "Underlying Litigation signed by Ms. Dolores M. Dealmieda" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "B".

16. According to the Underlying Litigation, Defendant allege through its Attorney that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" prior to the filing of its foreclosure complaint. However, the certification of OneWest Bank, to support its standing to foreclose of Ms. Erica A. Johnson-Seck, Vice President dated September 23, 2010 does not assert or point to any evidence to show that OneWest Bank, FSB sent Plaintiff a Notice of Intent to Foreclose on the Plaintiff's Property sent to the Plaintiff via certified mail return receipt request in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. See "a true copy of the complaint "Underlying Litigation by Ms. Erica A. Johnson-Seck, certification" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "C".

17. According to the Underlying Litigation, Defendant alleges through its Attorney that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" prior to the filing of its foreclosure complaint. However, the Statement of Facts of Mr. Joshua B. Sears, Esq. and Mr. Sears Certification Attorney for Defendant dated May 4, 2010 does not assert or point to any evidence to show that OneWest Bank, FSB sent Plaintiff a Notice of Intent to Foreclose on the Plaintiff's Property sent to the Plaintiff via certified mail return receipt request in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. See "a true copy of the complaint "Underlying Litigation by Mr. Joshua B. Sears, Esq., certification" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "D"

18. According to the Underlying Litigation, Defendant alleges through its Attorney that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" prior to the filing of its foreclosure complaint. However, the certification of Proof of Amount Due and Non-Military Service in Support of Motion for Summary Judgment of Ms. Kristin Kemp, Assistant Vice President dated February 23, 2010 does not assert or point to any evidence to show that OneWest Bank, FSB sent Plaintiff a Notice of Intent to Foreclose on the Plaintiff's Property sent to the Plaintiff via certified mail return receipt request in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. See "a true copy of the complaint "Underlying Litigation by Ms. Kristin Kemp, certification" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "E".

19. According to the Underlying Litigation, Defendant alleges through its Attorney that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" prior to the filing of its foreclosure complaint. However, the certification of OneWest Bank, to support its certification of Proof of Amount Due and Schedule of Ms. Caryn Edwards, Assistant Secretary dated March 9, 2013 does not assert or point to any evidence to show that plaintiff sent Plaintiff a Notice of Intent to Foreclose on the Plaintiff's Property sent to the Plaintiff via certified mail return receipt request in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. See "a true copy of the complaint "Underlying Litigation by Ms. Caryn Edwards, certification" filed as evidence in the Chancery Division Court under Docket# F-61487-09" attached hereto as exhibit "F".

20. Plaintiff contend Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt by filing a complaint (the Foreclosure Complaint"), which OneWest Bank, FSB through it Attorney wrongfully alleged OneWest Bank, FSB was in compliance with the "Fair Foreclosure Act" and for attempting to continue to collect a debt without identifying in the foreclosure action under docket number F-61487-09 that OneWest Bank, FSB is a "residential mortgage lender" or "lender" as define by N.J.S.A. 2A:50-56(c) when all OneWest Bank, FSB's motion pleadings of record did not assert or even offered any evidence to show that OneWest Bank, FSB indeed sent Plaintiff a Notice of Intent to Foreclose on the Plaintiff's Property sent to the Plaintiff via certified mail return receipt request in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. Here, Plaintiff contends that Defendant has violated §1692e(2) and 1692(10) of the FDCPA by making false, deceptive, and/or misleading representation in its Underlying Litigation filed on November 23, 2009 notice to Plaintiff and the Chancery Division trial Court that OneWest Bank, FSB was compliance with the "Fair Foreclosure Act" as further attempt to collect the debt when in all its motion papers shows that OneWest Bank, FSB was not in compliance with the Fair Foreclosure Act N.J.S.A. 2A:50-53 et seq. to support any judgment(s) being granted in its favor.

21. On May 30, 2007, Plaintiff Rodney Lee, gave a Remi Capital Inc. and at that time it was made payable to the order of Remi Capital Inc. See "a true copy of the Plaintiff's Residential mortgage promissory Note dated August 6, 2007" filed as evidence in the Chancery Division Court under Docket# F-61487-09 attached hereto as exhibit "G".

22. On May 30, 2007, Plaintiff Rodney Lee, gave a Residential mortgage to Mortgage Electronic Registration Systems, Inc. as Nominee for Remi Capital Inc. a Mortgage securing the Residential mortgage promissory Note. This document was recorded in the Official Records of Essex County on June 11, 2007. See "a true copy of the Plaintiff's Residential Mortgage dated May 30, 2007" filed as evidence in the Chancery Division Court under Docket# F-61487-09 attached hereto as exhibit "H".

23. Plaintiff contend Defendant violated the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt when
OneWest Bank, FSB had no legal right to accelerate the defendant's
mortgage as a "Residential mortgage lender" or "Lender" within the
meaning of "lender" as assignee of the mortgage N.J.S.A.2A:50-55 and has
not complied with the FFA, see N.J.S.A. 2A:50-56(c)(11) Therefore,
Plaintiff complains that Defendants' Underlying Litigation filed on behalf of
their Attorney violated §1692e(2) and 1692(10) of the FDCPA by making
false, deceptive, and/or misleading representation that their client was in
compliance of N.J.S.A. 2A:50-56 prior to its filing.

24. Additionally, this OneWest Bank, FSB foreclosure case is no longer active
in the Chancery Division court. However, Plaintiff is seeking an appeal in
the Supreme Court Defendant's wrongful foreclosure where it was granted a
final judgment on December 18, 2013. See "a true copy of the Final
Judgment" filed as evidence in the Chancery Division Court under Docket#
F-61487-09 attached hereto as exhibit "I".

25. Plaintiff contends, Defendant has proceeded to take legal action to take
possession of the residential property which is the subject of the mortgage
through a Sheriff's Sale with a without demonstrating that OneWest Bank,
FSB is a "Residential mortgage lender" or "lender" prior to 30 days
commencement of this foreclosure action and pursuant to N.J.S.A. 2A: 50-
56 demonstrates that Defendant has continues to violated §1692e(2)(A) and
1692e(10) of the FDPA by making false, deceptive, and/or misleading
representations in the Foreclosure action and because Defendant has
continue to with the Sheriff's Sale of Plaintiff's personal property without
demonstrating that OneWest Bank, FSB is a "Residential mortgage lender"
or "lender" prior to 30 days commencement of this foreclosure action and
pursuant to N.J.S.A. 2A: 50-56 resulting in the loss of Plaintiff's residential
property to a third party shows that this action taken by Defendant which is,
in violation of § 1692e(5) of the FDCPA and in violation N.J.S.A. 2A:50-56.
See "a true copy of the Essex County Sheriff's Deed" filed as evidence in
the Chancery Division Court under Docket# F-61487-09 attached hereto as
exhibit "J".

26. Finally, Plaintiff contends Defendant's action constituted engaging in unfair
or unconscionable means to collect or attempt to collect a debt, in violation
of § 1692e(5) of the FDCPA.

## FIRST CAUSE OF ACTION –DECLARATORY RELIEF

27. Plaintiff repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

28. Defendant has violated the Fair Foreclosure Act see N.J.S.A. 2A:50-56(c)(11) in violation of § 1692e(5) of the FDCPA as complained of herein and in other ways as discovery will show.

29. Such violation(s) caused plaintiff damages.

## SECOND CAUSE OF ACTION –NEGLIGENT

30. Plaintiff repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

31. As result of Defendant's negligent acts, plaintiff has suffered and continues to suffer emotional distress and other diminishments of plaintiff's quality life with the loss of his real personal property.

32. "The FDCPA is a consumer protection statue that prohibits certain abusive, deceptive, and unfair debt collection practices. By its terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while ensuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C.§ 1692. To that end, the FDCPA prohibits the use of any "false, deceptive, or misleading representations or means to connection with the collection of any debt." 15 U.S.C. § 1692, and creates a private right of action against debt collectors who fail to comply with its provisions.

33. Plaintiff is a "consumer" who has been harmed by Defendant OneWest Bank, FSB through its Attorney acts or omission violating the FDCPA. OneWest Bank, FSB is "debt collector" in an attempt to collect a "debt" that arises out of a transaction entered into primarily for personal, family, or household purposes.

34. Defendant had no remedy at law to enforce the right to exclusive possession of the Subject Property where OneWest Bank, FSB did not send Plaintiff a Notice of Intention Foreclosure to Plaintiff that had complied with the FFA and fit within the meaning of "lender" as assignee of the mortgage N.J.S.A.2A: 50-55 and complied with the FFA, see N.J.S.A. 2A: 50-56(c)(11) which requires foreclosure plaintiffs to identify the name and address of the "**actual lender**" on the notice of intent to foreclose.

35. OneWest Bank, FSB by not sending Plaintiff a Notice of Intention to Foreclosure to Plaintiff but alleged it did in its underlying litigation claim dated November 4, 2009 to the Chancery Division Court and Plaintiff was false, deceptive, and misleading to Plaintiff under the FDCPA which is, in violation of § 1692e (5) of the FDCPA and in violation N.J.S.A. 2A:50-56.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendant as follows:

A. For a declaration that the foreclosure, which was instituted, be deemed and declared illegal and void, and that any further proceedings in connection be enjoined.

B. Plaintiff demands judgment against defendant in a sum in excess of $50,000. (FIFTY THOUSAND DOLLARS) in the first claim for relief, in a sum in excess of $50,000. (FIFTY THOUSAND DOLLARS) in the second claim for relief, together with any all remedies available based on Defendant's violations of federal and state statutes and regulations;

C. For actual and consequential damages;

D. For cost of the suit herein incurred;

E. For Statutory, Compensatory and Punitive Damages as accorded by law;

## **VERIFICATION**

I, the undersigned Plaintiffs, do solemnly swear; declare under penalty of perjury of the laws of New Jersey and the United States and State as follows:

To best of my personal knowledge and behalf, all the facts within this Complaint are true and correct.

FURTHER, THE AFFIANT
IN WITNESS WHEREOF, I hereunto set my hand and my seal, and hereby certify all the statements made above are true, correct and complete.

DATED _____ ,2017

Respectfully Submitted,

Rodney Lee, Plaintiff Pro Se
70 Whitford Drive
Burlington NJ 08016
Rodolee33@aol.com
(973) 951-8404 Phone (908) 355-6581 Fax

I affirm that the above signature is that of Rodney Lee, with who did personally appear before me.

**JACQUELINE K. TEJADA**
**NOTARY PUBLIC OF NEW JERSEY**
**I.D. # 50033264**
**My Commission Expires 2/25/2021**

Signature of Notary Public

MY COMMISION EXPIRES

F. For such other further relief as the court may deem just and proper.

Dated: _____, 2017

Respectfully Submitted,

_____

Rodney Lee, Plaintiff Pro Se
70 Whitford Drive
Burlington NJ 08016
Rodolee33@aol.com
(973) 951-8404 Phone (908) 355-6581 Fax

## JURY TRIAL DEMANDED

I affirm that the above signature is that of Rodney Lee, with who did personally appear before me.

_____
Signature of Notary Public

JACQUELINE K. TEJADA
NOTARY PUBLIC OF NEW JERSEY
I.D. # 50033264
My Commission Expires 2/25/2021

_____
MY COMMISION EXPIRES

# EXHIBIT A

**IndyMac Mortgage Services,**
**a division of OneWest Bank®, FSB**
6900 Beatrice Drive • Kalamazoo, MI 49009

July 31, 2013

#BWNDXCT
#6684405300101087# 000197/TX040/668
RODNEY LEE
70 WHITFORD DRIVE
BURLINGTON NJ 08016

SUBJECT: Escrow Account - Taxes
         Loan Number 1010035044
         Property Address: 551 S Orange Ave
                           Newark NJ 07106

Dear Rodney Lee :

IndyMac Mortgage Services, a division of OneWest Bank, FSB maintains an
escrow account in connection with your loan referenced above for the
payment of your property taxes. This is to notify you that the Tax
Collector's Office has not released the current tax bill for your property.

As soon as we receive notice that your tax bill has been released and we
can obtain the amount(s) to pay, we will make the payment by the due
date specified by the Tax Collector. If you receive the tax bill,
please forward it immediately to our office for prompt processing at the
following address:

                    IndyMac Mortgage Services
                    Attn:  HLS Tax Services
                    PO Box 4045·
                    Kalamazoo, MI 49003-4045

If you have any questions or concerns regarding your loan, you can speak
with a customer service representative at 1.800.781.7399.
Representatives are available Monday through Friday, 8 a.m. to 9 p.m.
(ET) or Saturday, 9 a.m. to 6 p.m. (ET).

Sincerely,
IndyMac Mortgage Services, a division of OneWest Bank, FSB

TAX DEPARTMENT

TX040 028 395

This is a communication from a debt collector attempting to collect a
debt. Any information obtained will be used for that purpose. However, if
you have filed a bankruptcy petition and there is either an "automatic
stay" in effect in your bankruptcy case, or your debt has been
discharged pursuant to the bankruptcy laws of the United States, this
communication is intended solely for informational purposes.

**IndyMac Mortgage Services**
a division of OneWest Bank®
PO Box 4045
Kalamazoo, MI 49003-4045

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO®
OCWEN.MORTGAGEBANKSITE.COM



O C W E N

08/12/2013

07/25/13 12:00 3   0005038 20130809 IH99Y103 INDYMAC 1 GZ DOM IH99Y10000° 150647  LT

 հվԱվովՄԱՄավիերվիֆուդովի՜ՄիֆՄՄֆֆուՄֆֆ
RODNEY   LEE
70 WHITFORD DRIVE
BURLINGTON NJ   08016-4342

Ocwen Loan #      7196019322
Prior Loan #:      1010035044
Property Address:   551 ORANGE AVE
                    NEWARK NJ 07106

## NOTICE OF SERVICING TRANSFER (RESPA) and
## WELCOME TO OCWEN LOAN SERVICING, LLC

Dear Customer(s):

Effective 09/01/2013, IndyMac Mortgage Services, a division of OneWest Bank, FSB (IndyMac) will transfer the servicing of your mortgage loan to Ocwen Loan Servicing, LLC (Ocwen). The transfer of the servicing of your loan does not affect any term or condition of your mortgage contract, other than terms directly related to the servicing of your account. Your account number will change, and the new account number is noted above. Key information regarding the servicing of your account is provided below.

Should you have questions relating to the transfer of servicing or need information regarding your account prior to 09/01/2013, please contact IndyMac's Customer Call Center at (800) 781-7399.

New Servicer Contact Information:
As of 09/01/2013, Ocwen's Customer Care Center will assist you with questions regarding the transfer of servicing or any other questions relating to your account. You may reach Ocwen's Customer Care Center at (800) 766-4622, Monday through Friday 6:00 a.m. - 10:00 p.m. CT or Saturday 8:00 a.m. - 2:00 p.m. CT. Information concerning Ocwen and your mortgage loan may also be found online at OCWEN.MORTGAGEBANKSITE.COM. You can also obtain information using Ocwen's Automated Telephone system or by speaking with a Customer Care Center Representative. Please be sure to have your account number available when you call.

As of 09/01/2013, all written inquiries should be sent to Ocwen at the following address. Please be sure to indicate your account number on all correspondence to ensure prompt response to your inquiry.

> Ocwen Loan Servicing, LLC
> Attn: Customer Service Department
> PO Box 780
> Waterloo, IA  50704-0780

Making Payments:
**The date that IndyMac will stop accepting a payment from you is 08/30/2013. The date that Ocwen will start accepting payments from you is 09/01/2013. Please make all checks payable to Ocwen and send all payments due on or after 09/01/2013.** If you use a Bill Pay Service, you will also need to inform them of this new payment address.

For Western Union Quick Collect users, you can find the location nearest to you by calling (800) 238-5772 or visiting www.westernunion.com and clicking on "Find a Location". At the location, please pay to name "OCWEN", the Code City, State, and provide the Loan Number.

**ACH (Automated Payments) or One-time Web Payments**
**Automatic monthly payments or one-time web payments can be setup and managed from our website at OCWEN.MORTGAGEBANKSITE.COM.**

| Western Union Quick Collect | MoneyGram® | Check Payment Via Regular Mail |
|---|---|---|
| **Code City:** HOME | Receiver Code: 2365 | **Address:** |
| **State:** IOWA | Payable To: OCWEN LOAN SERVICING, LLC | OCWEN LOAN SERVICING, LLC |
| **Reference:** OCWEN LOAN NUMBER: | Reference: OCWEN LOAN NUMBER: | PO BOX 9001719 |
| **7196019322** | 7196019322 | LOUISVILLE, KY  40290-1719 |
| **Agent Locator:** (800) 325-6000 | Agent Locator: (800) 926-9400 | |

Please be sure to always include your Ocwen loan number with your payment.

If you are currently enrolled in IndyMac's automated payment program (ACH) and your monthly payments are automatically withdrawn from your bank account, the service will continue with Ocwen.

Ocwen NMLS #1852
IndyMac NMLS#541760

Taxes and Insurance:

If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be responsible for payment of these items after your account transfers to Ocwen. To ensure our records accurately reflect your insurance carrier and taxing authority, you may receive a letter of verification from Ocwen shortly after the transfer.

Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

| INSURANCE | PROPERTY TAXES |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ISAOA | Attn: Tax Department |
| PO Box 4025 | PO Box 961219 |
| Coraopolis, PA 15108 | Fort Worth, TX 76161-0219 |
| Insurance Center: (800) 256-9962 | Customer Care Center: (877) 261-5760 |
| Insurance Center Fax: (866) 336-9021 | |

Year-end Interest Statement (IRS Form 1098):

By January 31 of each year, you will be mailed an Annual Tax and Interest Statement from each company that has serviced your loan during the prior year. Each statement will contain IRS reporting information for the time your loan was serviced by each servicer.

Optional Insurance:

The transfer of servicing rights may affect the terms of, or the continued availability of mortgage life, disability insurance, or any other type of optional insurance. Not everyone has this type of insurance, but if you do, please be advised that it may not transfer to Ocwen Loan Servicing, LLC. Unless you are notified in writing by Ocwen, your insurance will transfer with your loan.

Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days before the effective date of transfer. Your new Servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives your certain consumer rights. If you should need to send a "qualified written request" to your loan Servicer concerning the servicing of your loan, your Servicer must provide you with a written acknowledgement within five (5) business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice in a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:

| If to IndyMac.: | If to Ocwen: |
|---|---|
| IndyMac Mortgage Services | Ocwen Loan Servicing, LLC |
| Attn: Correspondence Research | Attn: Research Department |
| P.O. Box 4045 | PO Box 780 |
| Kalamazoo, MI 49003-4045 | Waterloo, IA 50704-0780 |

Not later than thirty (30) business days after receiving your request, your Servicer must make appropriate corrections to your account and provide you with a written clarification regarding any dispute, or in some circumstances, a notice of a fifteen (15) business day extension. During this period, your Servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the Servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where Servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated. Please retain this information with your financing agreement documentation. We look forward to working with you and providing you with the highest quality customer care service.

**Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt: any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.**

**IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.**

**Attention Service members and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and nine months after the service member's**

**What if I made a payment to my IndyMac, but it has not posted yet?**
IndyMac will forward your payment to us within 15 business days. It may take a few days for us to receive and apply the payments, but this will not negatively impact your account or your credit report.   To check on the status of your account, you may go to OCWEN.MORTGAGEBANKSITE.COM.

**How can I get information about my account?**
You can access Ocwen's website and/or automated telephone system which will provide you with information regarding your account 24 hours a day.  These systems have been designed to provide you with the most frequently requested services or information.  This includes, but is not limited to, options to obtain payment histories, a payoff quote, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ).  Website: OCWEN.MORTGAGEBANKSITE.COM. Telephone Number: (800) 766-4622.

**If my account is past due and I have not made a payment arrangement with IndyMac, how can I make payment arrangements or get assistance due to financial difficulties?**
We offer a number of specialized programs designed to assist borrowers who are past due. Please go to
OCWEN.MORTGAGEBANKSITE.COM, click on the Help for Homeowners section for information or financial analysis forms.

**If my account is current, where do I send my payments?**

| | |
|---|---|
| Payment Processing Address: | For Overnight Express Payments: |
| Ocwen Loan Servicing, LLC | Attn:  Payment Processing Center |
| PO Box 9001719 | 6716 Grade Lane Building 9; Suite 910 |
| Louisville, KY  40290-1719 | Louisville, KY  40213-1407 |

**Are there any special requirements for hazard insurance?**
It is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance on your property (with flood and/or windstorm coverage, as applicable) and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy.  If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

| **INSURANCE** | **PROPERTY TAXES** |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ISAOA | Attn: Tax Department |
| PO Box 4025 | PO Box 961219 |
| Coraopolis, PA  15108 | Fort Worth, TX  76161-0219 |
| Insurance Center: (800) 256-9962 | Customer Care Center: (877) 261-5760 |
| Insurance Center Fax: (866) 336-9021 | |

---

**Mortgage Modifications**

**I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification. What do I do?**
You should continue making your monthly payments as required in the modification plan.  IndyMac will be providing Ocwen the status of your modification.  Please allow 30 days to review and process your information.  It is not necessary to call for a status prior to 30 days, as the agent will not have any additional information to provide you.

**How do I contact my relationship manager?**
To contact your relationship manager contact our Customer Care Center at (800) 766-4622 and request an appointment with your Relationship Manager.

**I just submitted my modification application to IndyMac. Should I send this to Ocwen again?**
IndyMac will provide Ocwen with the status of your modification application and copies of your documentation.  It is not necessary to re-send the documents to Ocwen at this time.  Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility.  It is not necessary to call prior to 30 days as the agent will not have any additional information to provide you.

**I received a notice fromIndyMac that I was denied for the Making Home Affordable Program.  I am still having financial difficulty; what can I do?**
We may still be able to help you.  We offer a number of specialized programs designed to assist borrowers who are past due.  Please go to OCWEN.MORTGAGEBANKSITE.COM for more information and to download an application for assistance.

**I received a notice from IndyMac that they were missing documents for my modification but I have not sent them yet; do I send these documents to Ocwen now?**
Yes, please send the documents to Ocwen via e-mail at  FINANCIAL.PACKAGE@OCWEN1.COM or fax the documents to (866) 709-4744. IndyMac will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation.  Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

---

**Short Sale & Deed In Lieu**

**I have a Short Sale or Deed in Lieu application pending with IndyMac. Do I have to resend all the documentation to Ocwen now and re-apply?**
If you have a pending foreclosure sale date or closing scheduled in the next 60 days, please resend the documentation by fax to (866) 709-4744 to expedite processing.  If you do not have a foreclosure sale or scheduled closing in the next 60 days, IndyMac will provide Ocwen the status of your pending resolution.  Ocwen will be contacting you with a final approval or denial.  Please allow Ocwen 30 days to process your Short Sale or Deed in Lieu application.

**I received approval from IndyMac for a Short Sale or Deed in Lieu; will this approval be honored by Ocwen?**

**Important Information About This Transfer**

You should also be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2605). During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA also gives you certain consumer rights. If you send a "qualified written request" to Ocwen Loan Servicing (Attention Customer Service Department, PO Box 780, Waterloo, IA 50704-0708) concerning the servicing of your loan, Ocwen must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice on a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number and your reasons for the request. A "business day" is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Not later than 60 business days after receiving your request, Ocwen must make the appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day period, Ocwen may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent Ocwen from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals in circumstances where servicers are shown to have violated this section. You should seek legal advice if you believe your rights have been violated.

Disclaimer Regarding Mandatory Arbitration Provisions: If your account documents require you to submit disputes regarding your account to arbitration for resolution, such requirement is waived and will not be enforced against you. Such waiver, however, does not affect any rights you may have to require arbitration of disputes regarding your account.

Credit Reporting: You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

Identity Theft Notice: If you would like to obtain information regarding identity theft, you may contact the Federal Trade Commission at www.ftc.gov/bcp/edu/microsites/idtheft/ OR by calling 1-877-ID-THEFT (1-877-438-4338).

Properties in California: The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason that you may not receive personals calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may not contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or  www.ftc.gov.

Properties in Colorado: For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/cab.htm. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

Properties in Hawaii: Ocwen Loan Servicing, LLC is licensed by the Commissioner of Financial Institutions in Hawaii. Complaints and inquiries about the servicer may be submitted to the Commissioner.

Properties in Maryland: The Maryland Consumer Protection Act require us to disclose that if Ocwen fails to give written notice of this transfer or fails to make timely payments of taxes or insurance premiums (assuming the borrower has paid an amount to cover these costs) and Ocwen has received the tax bill or notice, Ocwen may face liability for any economic damages incurred by the borrower.

Properties in Minnesota: Borrowers on loans secured by property in Minnesota can direct complaints and inquiries and questions to the Ocwen Loan Servicing, LLC. Customer Care Department at (800) 746-2936 between 8:00 a.m. and 9:00 p.m. ET, Monday through Friday, from 8:00 a.m. to 5:00 p.m. ET on Saturday, or from 9:00 a.m. to 9:00 p.m. ET on Sunday or in writing to: P.O. Box 24738, West Palm Beach, FL 33416-4738. Each written complaint or question will be responded to within 15 days.

Properties in New York: Ocwen Loan Servicing, LLC is registered with the Superintendent of the New York State Banking Department. The borrower may file complaints and inquiries about Ocwen Loan Servicing, LLC with or obtain further information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877- BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

Properties in North Carolina: Ocwen Loan Servicing, LLC is licensed by the North Carolina Commissioner of Banks (North Carolina Permit No. 3946) and complaints and inquiries about Ocwen Loan Servicing, LLC may be submitted to the Commissioner.

Properties in Texas: The State of Texas requires us to inform you that a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan: Complaints and inquiries regarding the servicing of your mortgage should be sent to the Department of Savings and Mortgage Lending, 2601 N. Lamar, Suite 201, Austin, Texas 78705. Complaint Forms and Instructions may be downloaded and printed from the Departments website located at http://www.sml.state.tx.us or obtained from the Department upon request by mail at the address above, by telephone at its Toll-free Consumer Hotline at (877) 276-5550, by fax at (512) 475-1360, or by email at SMLinfo@SML.STATE.TX.US.

Attention Servicemembers and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protection for you, including exceptions to foreclosure during military service and a period thereafter as provided by federal law.

IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess

Taxes and Insurance:

If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be responsible for payment of these items after your account transfers to Ocwen. To ensure our records accurately reflect your insurance carrier and taxing authority, you may receive a letter of verification from Ocwen shortly after the transfer.

Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

INSURANCE | PROPERTY TAXES
Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC
ISAOA | Attn: Tax Department
PO Box 4025 | PO Box 961219
Coraopolis, PA 15108 | Fort Worth, TX 76161-0219
Insurance Center: (800) 256-9962 | Customer Care Center: (877) 261-5760
Insurance Center Fax: (866) 336-9021

Year-end Interest Statement (IRS Form 1098):

By January 31 of each year, you will be mailed an Annual Tax and Interest Statement from each company that has serviced your loan during the prior year. Each statement will contain IRS reporting information for the time your loan was serviced by each servicer.

Optional Insurance:
obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.

Attention Service members and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and nine months after the service member's military or other service. IndyMac will not foreclose on the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a service member's written waiver agreement.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# EXHIBIT B

**FEIN, SUCH, KAHN & SHEPARD, P.C.**
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
YIND1080
Attorney for Plaintiff

**FILED**

NOV 2 3 2009

SUPERIOR COURT
CLERK'S OFFICE

ONEWEST BANK, FSB

                                    Plaintiff

vs.

ECL Management: Rodney Lee : STATE
OF NEW JERSEY:

                                    Defendant

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION-
ESSEX COUNTY

DOCKET NO. **F - 6 1 4 8 7 - 0 9**

CIVIL ACTION

**COMPLAINT IN FORECLOSURE**

---

**ONEWEST BANK, FSB** having its principal place of business at
888 E. WALNUT STREET, PASADENA, CA, 91101, and authorized to do
business in the State of New Jersey, the Plaintiff in the above
entitled cause says:

### FIRST COUNT

1. On May 30, 2007, RODNEY LEE, executed to REMI CAPITAL
INC., a Note in the sum of $144,800.00 payable on June 1, 2037,
with interest at the rate of 7.875% per annum, payable by
payments of $950.25 per month for interest and principal. The
Note further provides for a late charge of 5.0 percent for any
payment not received 15 days from the date due.

2. To secure the payment of the aforesaid obligation,
RODNEY LEE, executed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
INC AS NOMINEE FOR REMI CAPITAL INC., a Mortgage of even date
with said Note, and thereby conveyed to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC AS NOMINEE FOR REMI CAPITAL INC., in fee
to the land hereinafter described, on the express condition that

such conveyance should be void if payment should be made at the time and times, and in the manner described in said obligation. Said Mortgage was dated May 30, 2007 and recorded in the Office of the ESSEX County Clerk/Register on June 11, 2007 in Mortgage Book 12062, Page 3355, et seq. **This is a Non Purchase Money Mortgage.**

3. Said mortgage was assigned by MORTGAGE ELECTRCNIC REGISTRATION SYSTEMS INC AS NOMINEE FOR REMI CAPITAL INC to **ONEWEST BANK, FSB** , Plaintiff herein, by assignment dated October 27, 2009 and is to be recorded.

4. This legal description is derived from our title report and comes from the mortgage. The mortgaged premises are fully described in Schedule "A" annexed hereto and made a part hereof.

5. The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and/or insurance premiums should remain unpaid for more than (30) thirty days from the date the Notice of Default is mailed to the Obligor, the whole principal sum with all unpaid interest, should, at the option of the above named mortgagee or its assigns, become immediately due and payable.

6. The defendants listed herein are named as party defendants to this action for any right, title and interest they may have in, tc or against the subject property for reasons set forth below:

6a. By deed dated June 30, 2009, Rodney Lee conveyed all his right, title and interest in and to the mcrtgaged premises to RCL MANAGEMENT. The deed was recorded July 1, 2009 in the Essex

County Clerk/Registrar's Office in Deed Book 12202, Page 9495 et
seq.

6b.   THE STATE OF NEW JERSEY is made a party defendant to
this action for any corporate franchise taxes that may be due. from ECC
Management

7.   Pursuant to the terms of the obligation referred to in
Paragraph 1 above (the terms of which are incorporated in the
mortgage referred to in Paragraph 2 above), the Obligee named in
said obligation reserved the right to pay taxes or other liens
affecting the premises herein described, which liens are superior
to the lien of the mortgage referred to in Paragraph 2 above and
which liens when paid by the obligee or assignee, together with
interest thereon as provided in said obligation and mortgage, are
to be added to the amount due on the obligation and mortgage.
The obligee may be required to pay such liens during the pendency
of this action and will demand that such payments so made by said
obligee or assignee be added to the mortgage debt as aforesaid.
The Note and Mortgage do not contain a pre-payment penalty.

8.   The mortgagors, obligors, their grantee or grantees, if
any has defaulted in making their monthly mortgage payment to the
Plaintiff herein as required by the terms of the obligation and
mortgage referred to in paragraphs 1 and 2 above, and said
payments have remained unpaid for more than (30) thirty days from
the date of mailing Notice of Default to the Obligor, and are
still unpaid.

Plaintiff herein, by reason of said default, elected that the
whole unpaid principal sum due on the aforesaid obligation and
mortgage referred to in Paragraphs 1 and 2 above, with all unpaid

interest and advances made thereon, shall now be due. The date of default is July 1, 2009.

9. Any interest or lien on the premises described in Paragraph 4 above which the mortgagor named in Paragraph 2 above or the grantees of said mortgagor, or which subsequent encumbrancers or lien holders, if any, named in Paragraph 6 above, or tenants named in Paragraph 6, who are the Defendants herein have or claim to have in or upon the aforesaid mortgage premises or some part thereof are subject and subordinate to the lien of the mortgage set forth in Paragraph 2 above, which mortgage is held by the Plaintiff herein.

10. The Notice of Intention was mailed to the debtor(s) in compliance with the "Fair Foreclosure Act".

WHEREFORE, the Plaintiff and/or its assignee demands Judgment:

(a) Fixing the amount due on the Mortgage referred to in Paragraph 2 above;

(b) Barring and foreclosing all of the Defendants, of all equity or redemption in and to the aforesaid lands;

(c) Directing that Plaintiff be paid the amount due to Plaintiff as provided in the Mortgage set forth in Paragraph 2 above, together with interest and costs;

(d) Adjudging that the lands described in Paragraph 4 above be sold according to law to satisfy the amount due to Plaintiff on the Mortgage set forth in Paragraph 2 above;

(e) Appointing a receiver of rents, issues and profits of the lands described in Paragraph 4 above.

## SECOND COUNT

1. By the terms of the obligation and mortgage referred to in Paragraphs 1 and 2 of the First Count of this Complaint, the Plaintiff herein is entitled to possession of the tract of land with appurtenances as more particularly described in Paragraph 4 of the First Count of this Complaint.

2. The Plaintiff and/or its assignee, by the terms of the obligation and mortgage aforesaid, became entitled to possession of the premises described in Paragraph 4 of the First Count of this Complaint since July 1, 2009.

3. The Debtors have or may claim to have certain rights in the premises described in Paragraph 4 of the First Count of this Complaint and by reason thereof have been in default from July 1, 2009 and have since deprived the Plaintiff herein of the possession of the premises aforesaid.

WHEREFORE, the Plaintiff or its assignee or the successful purchaser at Sheriff's Sale demands Judgment against the Defendants;

(a) For possession of said premises;

(b) For damages for mesne profits;

(c)  For costs.

FEIN SUCH KAHN AND SHEPARD, PC
Attorneys for Plaintiff

DOLORES M. DEALMEIDA

Dated: November 4, 2009

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other Court proceeding or arbitration and that, to the best of our knowledge and belief, no other parties need be joined at this time, and that no other proceedings are contemplated.

FEIN SUCH KAHN AND SHEPARD, PC
Attorneys for Plaintiff

DOLORES M. DEACHIETDA

Dated: November 4, 2009

## CERTIFICATION PURSUANT TO RULE 4:64-1(a)

I hereby certify that, pursuant to Rule 4:64-1(a), a title search of the public record was received by this office and that said title search was reviewed by the attorney of record.

DOLORES M. DeACHIEDA

Dated: November 4, 2009

## SCHEDULE "A"

All that certain tract or parcel of land and premises situate, lying and being in the CITY of NEWARK, County of ESSEX and State of New Jersey.

Also known as Tax Lot 28 in Block 1789 on the Tax Assessment map of the CITY of NEWARK.

More commonly known as 551 SOUTH ORANGE AVE, NEWARK, NJ, 07106.

### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Newark, County of Essex, State of New Jersey:

BEGINNING at a point in the northeasterly line of South Orange Avenue, therein distant 167.64 feet as measured northwesterly along the same from its intersection with the northwesterly line of South 20th Street, and from said point of Beginning, thence running;

(1) along the northeasterly line of South Orange Avenue, North 60 degrees 42 minutes 00 seconds West, a distance of 25.00 feet to a point; thence

(2) North 29 degrees 18 minutes 00 seconds East, a distance of 100.00 feet to a point; thence

(3) South 60 degrees 42 minutes 00 seconds East, a distance of 25.00 feet to a point; thence

(4) South 29 degrees 18 minutes 00 seconds West, a distance of 100.00 feet to a point in the northeasterly line of South Orange Avenue and place of BEGINNING.

NOTE: Being Lot(s)  Lot: 28, Block: 1789;  Tax Map of the City of Newark, County of Essex, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION
PRACTICES ACT, (the act),
15 U.S.C. SECTION 1601 as Amended

1.  The amount of the debt is stated in paragraph one of the complaint attached hereto.

2.  The plaintiff who is named in the attached summons and complaint is the creditor to whom the debt is owed.

3.  The debt described in the complaint is hereby attached hereto and evidenced by the copy of the mortgage note will be assumed to be valid by the creditor's law firm, unless the debtors, within thirty days after receipt of this notice, disputes, the validity of the debt or any portion thereof.

4.  If the debtor notifies the creditor's law firm in writing within thirty days of the receipt of this notice that the debt or portion thereof is disputed, the creditor's law firm will obtain verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

5.  If the creditor who is named as plaintiff in the attached summons and complaint is not the original creditor, and if the debtor makes written request to the creditor's law firm within thirty days from receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6.  Written request should be addressed to Fair Debt Collection Clerk, Fein, Such, Kahn & Shepard, P.C., 7 Century Drive, Suite 201, Parsippany, NJ 07054.

7.  **This communication is an attempt to collect a debt.  Any and all information obtained will be used for that purpose. Please be further advised that this and any further communication will not stay the proceeding of this action unless notified in writing by Lender or its counsel, or unless stayed by operation of law.**

# EXHIBIT C

**FEIN, SUCH, KAHN & SHEPARD, P.C.**
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
YIND1080
Attorney for Plaintiff

| | | |
|---|---|---|
| ONEWEST BANK FSB | | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION- ESSEX COUNTY |
| | Plaintiff | |
| vs. | | DOCKET NO.: F-61487-09 |
| RODNEY O. LEE, et al. | | CIVIL ACTION |
| | Defendant | **CERTIFICATION OF PLAINTIFF IN SUPPORT OF STANDING TO FORECLOSE** |

1. I am a Vice President for Plaintiff, One West Bank, FSB, the holder of the obligation subject to foreclosure, in the above entitled action. I have complete knowledge of the relevant facts and circumstances of this matter, particularly the books and records of Plaintiff, and the Plaintiff's servicing of the loan as it relates to the guidelines of Fannie Mae, owner of the loan. I am duly authorized to make this Certification in support of the Plaintiff's standing to foreclose the Mortgage.

2. Fannie Mae acquired ownership of the subject Note pursuant to a transaction on 6/14/07 and identifies the loan as Fannie Mae Loan No. 1704316753.

3. As owner of the obligation, payments are made to Fannie Mae pursuant to a remittance schedule from the funds collected by the loan servicer called for under the note signed by the Defendant/Mortgagor at closing. (See attached 2010 Fannie Mae Servicing Guide Part VIII, Section 103, Page 801-12 and 801-13.)

4. Consistent with the Fannie Mae Servicing Guidelines, when a borrower defaults on a mortgage loan that Fannie Mae holds in its portfolio, the servicer of that loan must protect the interests of Fannie Mae and initiate foreclosure proceedings in its own name in the interest of Fannie Mae. (See attached 2010 Fannie Mae Servicing Guide Part VIII, Introduction, Page 801-1 and also Section 105, Page 801-27.)

5. Plaintiff, ONEWEST BANK FSB, as servicer of the loan is responsible for the collecting and distributing of funds due from the Defendant mortgagor consistent with the Fannie Mae Servicing Guidelines and must prosecute any foreclosure of the obligation in accordance with the provisions of the mortgage loan, state law, federal statutes, and any special requirements of Fannie Mae. (See attached 2010 Fannie Mae Servicing Guide Part VIII, Introduction, Page 801-1.)

6. Consistent with the Fannie Mae Servicing Guidelines, possession of the original note has been delivered to the servicer, ONEWEST BANK FSB ("Plaintiff"), to act in its own name, and represent the interests of Fannie Mae, in foreclosing the delinquent Mortgage. (See attached 2010 Fannie Mae Servicing Guide Part VIII, Section 102, Page 801-4.)

7. Plaintiff, ONEWEST BANK FSB, as holder the Note endorsed in blank is entitled to enforce the obligation pursuant to N.J.S.A. 12A:3-205.

8. Consistent with Fannie Mae Servicing Guidelines, the Plaintiff is in actual possession of the original note and is the "holder" thereof. Fannie Mae remains the owner of the obligation that is the subject of foreclosure. (See attached 2010 Fannie Mae Servicing Guide Part VIII, Section 105, Page 801-28.)

I hereby certify that the foregoing statements made by me are true. I am aware that if any statement made by me is wilfully false, I am subject to punishment.

DATED: September 23, 2010

Name: _____

Erica A. Johnson-Seck

Position: __Vice President__

# EXHIBIT D

**FEIN, SUCH, KAHN & SHEPARD, P.C.**
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
YIND1080
Attorney for Plaintiff

| ONEWEST BANK, FSB | | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION- ESSEX COUNTY |
|---|---|---|
| | Plaintiff | |
| vs. | | DOCKET NO.: F-61487-09 |
| RODNEY LEE, et als. | | CIVIL ACTION |
| | Defendant | **STATEMENT OF MATERIAL FACTS** |

1. On May 30, 2007, RODNEY LEE, obtained a mortgage loan from REMI CAPITAL, INC., in the amount of $144,800.00. In consideration of this loan, RODNEY LEE, signed a Note and Mortgage promising to repay the loan.

2. The said Note and Mortgage were assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR REMI CAPITAL, INC., to ONEWEST BANK, FSB, by Assignment dated October 27, 2009, which was recorded on November 12, 2009, in the ESSEX County Clerk's Office in Assignment Book 12226, Page 5122, et seq.

3. On July 1, 2009 and continuing to the present time, RODNEY LEE, has failed and refused to make his payments to the plaintiff. In accordance with the terms of the Note and Mortgage, the plaintiff has elected to accelerate the balance due and to foreclose the mortgage made by RODNEY LEE.

4. An Answer has been filed by RODNEY LEE, which is not responsive to the allegations of Plaintiff's Complaint.   His execution of the Note and Mortgage and default thereon are not specifically denied. The Answer is a delaying tactic and there are no material issues of fact.   Plaintiff is not required by Rule 4:64-1 to attach the Note or Mortgage to its Complaint in Foreclosure.

5. The Plaintiff has demonstrated standing to foreclose the delinquent Mortgage on Defendant's investment property.   By contrast, the   Defendant has shown no legal defense to the foreclosure.

**FEIN, SUCH, KAHN & SHEPARD, P.C.**

By:_____

JOSHUA B. SEARS, ESQ.
Attorneys for Plaintiff

DATED: May 4, 2010

**FEIN, SUCH, KAHN & SHEPARD, P.C.**
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
YIND1080
Attorney for Plaintiff

| | | |
|---|---|---|
| ONEWEST BANK, FSB | | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION- ESSEX COUNTY |
| | Plaintiff | |
| vs. | | DOCKET NO.: F-61487-09 |
| RODNEY LEE, et als. | | CIVIL ACTION |
| | Defendant | **CERTIFICATION OF JOSHUA B. SEARS, ESQ., ATTORNEY FOR PLAINTIFF** |

MICHAEL S. HANUSEK, ESQ., does hereby certify as follows:

1.    I am an attorney at law in the State of New Jersey and an associate in the law firm of Fein, Such, Kahn, Shepard, P.C., attorneys for the plaintiff in the within action.

2.    Attached hereto as Exhibit "A" is a certified true copy of a Note dated May 30, 2007, executed by RODNEY LEE in the amount of $144,800.00.

3.    Attached hereto as Exhibit "B" is a certified and true copy of a Mortgage dated May 30, 2007, executed by RODNEY LEE, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR REMI CAPITAL, INC. recorded in the ESSEX County Clerk's Office on June 11, 2007, in Mortgage Book 12062, Page 3355, securing an amount of $144,800.00.

4.     The said Note and Mortgage were assigned by Assignment of
Mortgage from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR REMI CAPITAL, INC., to ONEWEST BANK, FSB, by Assignment
dated October 27, 2009 which was recorded on November 12, 2009 in
the ESSEX County Clerk/Register Office in Assignment Book 12226,
Page 5122, et seq.   The Assignment is attached hereto as Exhibit
"C".

5.     A copy of Defendant's Answer is annexed as Exhibit "D".

I hereby certify that the foregoing statements made by me are
true; I am aware that if any of the foregoing statements made by me
are wilfully false, I am subject to punishment.

**FEIN, SUCH, KAHN & SHEPARD, P.C.**

JOSHUA B. SEARS, ESQ.
DATED: May 4, 2010                            Attorneys for Plaintiff

# EXHIBIT E

**FEIN, SUCH, KAHN & SHEPARD, P.C.**
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973) 538-9300
YIND1080
Attorney for Plaintiff

| | | |
|---|---|---|
| ONEWEST BANK, FSB | | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION— ESSEX COUNTY |
| | Plaintiff | |
| vs. | | DOCKET NO.: F-61487-09 |
| RODNEY LEE, et als. | | CIVIL ACTION |
| | Defendant | **CERTIFICATION OF PROOF OF AMOUNT DUE AND NON-MILITARY SERVICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

     1.    I am a(n) _____Assistant Vice President_____ for the plaintiff in the above entitled action, and have complete knowledge of the amount due for principal and interest on defendant's obligation and mortgage set forth in the Complaint filed in this action.  I am authorized to make this Certification.

     2.    Plaintiff is the holder and owner of a Note and Mortgage executed by defendant RODNEY LEE, in the sum of $144,800.00, dated May 30, 2007.

     3.    The aforesaid Note called for a payment in the initial sum of $950.25, per month for interest and principal, plus taxes and insurance premiums.

     4.    Defendant, RODNEY LEE, has defaulted under the terms and conditions of the above stated Note by failing, refusing and neglecting to make the July 1, 2009 payment and all payments due thereafter.

     5.    Defendant, RODNEY LEE, has filed an Answer to the instant foreclosure.  The said Answer does not dispute or deny the validity of plaintiff's Mortgage or plaintiff's entitlement to a judgment of foreclosure, but is merely a delaying tactic.

     6.    I have examined the records of the plaintiff, concerning the above referred to obligation and mortgage, and I find from said records that there is due to the plaintiff in this cause, the sum of $161,770.63 as set forth on the Schedule annexed hereto, together with interest to grow thereon from 3/26/2010.

7.     I further state that the property in the complaint filed
in this cause cannot be divided and should be sold as a single
tract.

8.     There are no just debts, set-offs, credits or allowances
due or to become due from the plaintiff to the defendant, other
than those set forth herein.

9.     Plaintiff is still the holder and owner of the aforesaid
Obligation and Mortgage.

10.  Upon information and belief, none of the defendants in
this action are presently in the military service of the United
States or its Allies.

11.  I hereby certify that the foregoing statements made by me
are true.  I am aware that if any statement made by me is wilfully
false, I am subject to punishment.

DATED:     2.23.10

Kristin Kemp Assistant Vice President

## SCHEDULE TO CERTIFICATION OF PROOF OF AMOUNT DUE

OBLIGATION (BOND/NOTE) BEARING DATE OF:     **May 30, 2007**

IN THE SUM OF:          **$144,800.00**

PAYABLE ON:             **June 1, 2037**

RATE OF INTEREST:   **7.875**

MADE BY:                **RODNEY LEE**


SECURED BY A MORTGAGE SET FORTH IN THE COMPLAINT WHICH OBLIGATION

AND MORTGAGE ARE HELD BY THE PLAINTIFF.

PRINCIPAL BALANCE AS OF 3/26/2010                    $144,800.00

DATE OF DEFAULT: 7/1/2009

INTEREST FROM 6/1/2009 TO 3/26/2010                  $9,333.28

LATE CHARGES (prior to Complaint)                    $712.65


ADVANCES:

ESCROW                                   $6,924.70

ADVANCES TO WINTERIZE AND/OR

SECURE THE PROPERTY                      $N/A

TOTAL ESCROW DEFICIT                     $6,924.70

TOTAL AMOUNT DUE PLAINTIFF               $161,770.63

pc101

# EXHIBIT F

**AFFIDAVIT OF AMOUNT DUE TO BE ANNEXED TO NOTICES OF MOTION
FOR JUDGMENT IN RESIDUAL MORTGAGE FORECLOSURE ACTIONS
PURSUANT TO RULE 4:64-2 AND THAT MUST BE SUBMITTED IN
FORECLOSURE ACTIONS PENDING AS OF JUNE 9, 2011**

FEIN, SUCH, KAHN & SHEPARD, P.C
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
(973-538-9300)
YIND1080

Attorney for Plaintiff

| | |
|---|---|
| OneWest Bank, FSB,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY LEE, et als.<br><br>Defendant(s) | Superior Court of New Jersey<br>Chancery Division ESSeX<br>County<br>Docket No: F-61487-09<br><br>CIVIL ACTION<br><br>CERTIFICATION OF PROOF OF AMOUNT<br>DUE AND SCHEDULE |

           <u>Caryn Edwards</u>      , of full age, hereby states:

1.    I am employed by OneWest Bank, FSB ("OneWest") at its Austin, Texas office as an <u>Assistant Secretary</u>       .    My responsibilities in this position are: Reviewing legal documents for foreclosure and other legal actions within OneWest Bank's Home Loan Servicing department. I am authorized to make this certification on the behalf of OneWest Bank, FSB.

2.    In the regular performance of my job functions, I am familiar with business records maintained by OneWest for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time of the occurrences reflected therein by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records. The records are kept in the course of business activity conducted regularly by OneWest. It is the regular practice of OneWest's mortgage servicing business to make these records. In connection with making this affidavit, I have acquired

- 1 -

personal knowledge of the matters stated herein by personally examining these business records.

3.     Said books and business records indicate that the default of the borrower(s) remains uncured and there is due to the plaintiff in this action the sum of $207,228.64, as set forth in the Proof of Amount Schedule annexed hereto. I have reviewed all entries and calculations, and they are correct.

4.     OneWest Bank, FSB is the holder of the note.

5.     I understand that the court will rely upon this certification in support of the plaintiff's application for a foreclosure judgment in the within action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

3/9/13
_____
Date

*Caryn Edwards*    Assistant Secretary
*Sign Above and Type or Print Name Below*

- 2 -

## AMOUNT DUE SCHEDULE

NOTE AND MORTGAGE DATED 05/30/2007

Mortgage Recorded on 06/11/2007, in  $ESSexX$          County, in Book 12062 at
Page 3355

Property Address: 551 S ORANGE AVE , NEWARK, NJ, 07106

Mortgage Holder: OneWest Bank, FSB

## STATEMENT OF AMOUNT DUE

| | |
|---|---:|
| Unpaid Principal Balance | $144,800.00 |
| Interest from 06/01/2009 to 03/01/2013 accrued @ a variable rate | $42,761.25 |
| Interest rate = See attached interest rate breakdown, as applicable based on the terms of the note. | |
| Interest per day: $31.24 | |
| Interest per day $31.24 will accrue on the principle from 03/01/2013 and thereafter will accrue in accordance with the terms of the note. | |
| Late Charges through breach letter dated 08/17/2009 | $475.10 |
| Advances for: | |
| Real Estate Taxes | $13,900.97 |
| Home Owners Insurance Premiums | $5,230.82 |
| Mortgage Insurance Premiums | $0.00 |
| Inspections | $56.00 |
| Property Preservation | $0.00 |

- 3 -

| | |
|---|---|
| **Payment Short** | **$4.50** |
| **Payments/Credits to Escrow** | **$0.00** |
| **Credits to Recoverable Balances** | **$0.00** |
| **Suspense Balance** | **($0.00)** |
| **Restricted Escrow** | **($0.00)** |
| **Escrow Balance** | **($0.00)** |

**Total Due as of 03/01/2013**                                                                 **$207,228.64**

Surplus money: If after the sale and satisfaction of the mortgage debt including costs and expenses, there remains any surplus money, the money will be deposited into the Superior Court Trust Fund and any person claiming the surplus or any part thereof, may file a motion pursuant to Court Rules 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking for an order directing payment of the surplus money. The Sheriff or other person conducting the sale will have information regarding the surplus, if any.

Dated: 3/9/13

Name:  **Caryn Edwards**
Title:  **Assistant Secretary**

# EXHIBIT G

*Lee*

**ORIGINAL** 

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY FIXED PERIOD
### (1 Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

Loan # ██████████████              MIN: ██████████████

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 30, 2007                     HOBOKEN                   NEW JERSEY
[Date]                           [City]                    [State]

551 SOUTH ORANGE AVE, NEWARK, NEW JERSEY 07103
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 144,800.00           (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  REMI CAPITAL INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on  JULY 1, 2007           . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  JUNE 1, 2037           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5 MARINE VIEW PLAZA, HOBOKEN, NEW JERSEY 07030

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 950.25              before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**MULTISTATE FIXED/ADJUSTABLE RATE NOTE - 1 YEAR LIBOR INDEX - Single Family**
**(Fixed and Interest Only Periods are the same)**

Initials: _____

Page 1 of 5

8480832 (0506)                   VMP Mortgage Solutions, Inc. (800)521-7291

Form 5802
6/05

**(C) Monthly Payment Changes** .

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  JUNE

2017       , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 750/1000

percentage points (                 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than           12.875 % or less than         2.875 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than 2.000 percentage points from the rate of interest I have been paying for the preceding 12  months. My interest rate will never be greater than           12.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G)  Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

8480832 (0506)                                Page 2 of 5                                **Form 5602**
                                                                                        8/05

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
RODNEY LEE                -Borrower                                -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF   **INDYMAC BANK, FSB**
WITHOUT RECOURSE
REMI CAPITAL, INC.
SOVEREIGN BANK, ATTORNEY IN FACT
BY: _____

FRANCESCA A. BADOLATO
BANKING OFFICER

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
INDYMAC BANK, F.S.B.
_____
VINCENT DOMBROWSKI
VICE PRESIDENT

# EXHIBIT H

After Recording Return To:
REMI CAPITAL INC.
5 MARINE VIEW PLAZA
HOBOKEN, NEW JERSEY 07030
Loan Number: ▓▓▓▓▓▓▓▓

This Instrument Prepared By:

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

MIN: ▓▓▓▓▓▓▓▓▓▓▓

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 30, 2007          , together with all Riders to this document.
(B) "Borrower" is  RODNEY LEE MARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  REMI CAPITAL INC.

Lender is a                                                                                    organized
and existing under the laws of  NEW JERSEY
Lender's address is  5 MARINE VIEW PLAZA, HOBOKEN, NEW JERSEY 07030

(E) "Note" means the promissory note signed by Borrower and dated  MAY 30, 2007
The Note states that Borrower owes Lender  ONE HUNDRED FORTY-FOUR THOUSAND EIGHT HUNDRED AND 00/100          Dollars (U.S. $ 144,800.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 1, 2037          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic ⓔⓕⓞⓡⓜⓢ 800-649-1362
Form 3031 01/01                                    Page 1 of 13                                            www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3356

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☒ Adjustable Rate Rider ☐ Planned Unit Development Rider
☐ Balloon Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider ☐ Second Home Rider
☐ Condominium Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY of ESSEX :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic EForms 800-649-1362
Form 3031 01/01                                Page 2 of 13                        www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3357

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: LOT:28 BLOCK:1789

which currently has the address of                551 SOUTH ORANGE AVE
                                                        [Street]

                NEWARK                     , New Jersey     07103      ("Property Address"):
                 [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic EForms 800-649-1362
Form 3031 01/01                                    Page 3 of 13                              www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3358

 **FIRST AMERICAN TITLE INSURANCE COMPANY**

TITLE INSURANCE COMMITMENT

File Number: MAS-444

**SCHEDULE C**
**LEGAL DESCRIPTION**

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Newark, County of Essex, State of New Jersey:

BEGINNING at a point in the northeasterly line of South Orange Avenue, therein distant 167.64 feet as measured northwesterly along the same from its intersection with the northwesterly line of South 20th Street, and from said point of Beginning, thence running;

(1) along the northeasterly line of South Orange Avenue, North 60 degrees 42 minutes 00 seconds West, a distance of 25.00 feet to a point; thence

(2) North 29 degrees 18 minutes 00 seconds East, a distance of 100.00 feet to a point; thence

(3) South 60 degrees 42 minutes 00 seconds East, a distance of 25.00 feet to a point; thence

(4) South 29 degrees 18 minutes 00 seconds West, a distance of 100.00 feet to a point in the northeasterly line of South Orange Avenue and place of
BEGINNING.

NOTE: Being Lot(s) Lot: 28, Block: 1789; Tax Map of the City of Newark, County of Essex, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

*M3 ABSTRACT & SETTLEMENT, LLC*
**400 New Brunswick Avenue**
**Fords, NJ 08863**
**Telephone: (732) 661-0163**
**Facsimile: (732) 876-0321**
Inst# 7075306 BK# 12062 PG# 3359

Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                Page 4 of 13

DocMagic ℮Forms 800-649-1362
www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3360

shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                                  Page 5 of 13                   DocMagic *eForms* 800-649-1362
www.docmagic.com

During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                    Page 6 of 13                    DocMagic eForms 800-649-1362
                                                                   www.docmagic.com

secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  
Form 3031 01/01   Page 7 of 13

DocMagic eForms 800-649-1362  
www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3363

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest

Inst# 7075306 BK# 12062 PG# 3364

of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

NEW JERSEY—Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                                    Page 9 of 13

DocMagic ℰℱℴℛℳℨ 800-648-1362
www.docmagic.com

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic &#8471;&#8471;&#8471;&#8471;&#8471; 800-649-1362
Form 3031 01/01                                    Page 10 of 13                                        www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3366

of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RODNEY LEE                -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Signed, sealed and delivered in the presence of:

STEPHEN    TELODY

_____

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                 Page 12 of 13          DocMagic ☎ 800-649-1368
                                                       www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3368

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of New Jersey,

County of __ESSEX_____ , ss

    I CERTIFY that on 30 MAY 2007    RODNEY LEE

_____

_____

_____ .

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a)  was the maker of the attached instrument; and
(b)  executed this instrument as his or her own act.

Notary's Signature           Date

Notary's printed or typed name STEPHEN TEBODY
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Apr. 29, 2010

My commission expires: _____

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01          Page 13 of 13          DocMagic ☎ 800-649-1362
www.docmagic.com

Inst# 7075306 BK# 12062 PG# 3369

# EXHIBIT I

PAUL INNES, P.J. Ch.

Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

One West Bank, FSB

Plaintiff,

v.

Rodney Lee et al.

Defendant

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION

DOCKET NO.: A-005917-13

CIVIL ACTION

On Appeal From:
Superior Court of New Jersey
Chancery Division: Essex Court
Docket No.: F-61487-09

Sat Below:
The Honorable Harriet F. Klein, J.S.C

## BRIEF OF DEFENDANT–APPELLANT RODNEY LEE

Rodney Lee
70 Whitford Drive
Burlington NJ 08016
Pro se Defendant

On the Brief:
Rodney Lee, Pro Se Defendant

# EXHIBIT J

# RECORDING INFORMATION SHEET

**ESSEX COUNTY REGISTER'S OFFICE**
HALL OF RECORDS , ROOM 130
465 MARTIN LUTHER KING Jr. Blvd
NEWARK NJ 07102

| INSTRUMENT NUMBER: 14083914 | DOCUMENT TYPE : DEED |
|---|---|

**Official Use Only**

WILLIAM NARVAEZ
DEPUTY REGISTER
ESSEX COUNTY, NJ

INSTRUMENT NUMBER
14083914
RECORDED ON
November 20, 2014  01:37 pm
BOOK:12525 PAGE:6583

AC

CONSIDERATION (E) $100.00

MAIL COPY _____
NO COPY _____
ENVELOPE _____

ADDITIONAL STAMPINGS _____

**Return Address** *(for recorded documents)*
TERRA ABSTRACT, INC.
1581 MAIN STREET, SUITE 200
WARRINGTON PA 18976

| | | |
|---|---|---|
| No. Of Pages *(excluding Summary Sheet)* | | 8 |
| Recording Fee *(excluding Transfer Tax)* | | $110.00 |
| Realty Transfer Tax | | $0.00 |
| Amount Charged | (ACH) | $110.00 |
| Municipality | NEWARK | |
| Parcel Information | Block      1789<br>Lot        28 | |
| First Party Name | RODNEY LEE | |
| Second Party Name | FEDERAL NATIONAL MORTGAGE ASSN | |

**Additional Information (Official Use Only)**

*************************** *DO NOT REMOVE THIS PACE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY FILING RECORD*
******************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ********************



CERTIFIED TRUE COPY
DANA BONE
Essex County Register

3/24/2015
Date

# RECORDING INFORMATION SHEET

**ESSEX COUNTY REGISTER'S OFFICE**
HALL OF RECORDS , ROOM 130
465 MARTIN LUTHER KING Jr. Blvd
NEWARK NJ 07102

| INSTRUMENT NUMBER: 14083914 | DOCUMENT TYPE : **DEED** |
|---|---|

**Official Use Only**

WILLIAM NARVAEZ
DEPUTY REGISTER
ESSEX COUNTY, NJ

INSTRUMENT NUMBER
14083914
RECORDED ON
November 20, 2014  01:37 pm
BOOK:12525 PAGE:6583

AC

Return Address *(for recorded documents)*
TERRA ABSTRACT, INC.
1581 MAIN STREET, SUITE 200
WARRINGTON PA 18976

| No. Of Pages *(excluding Summary Sheet)* | | 8 |
|---|---|---|
| Recording Fee *(excluding Transfer Tax)* | | $110.00 |
| Realty Transfer Tax | | $0.00 |
| Amount Charged      (ACH) | | $110.00 |
| Municipality | NEWARK | |
| Parcel Information | Block      1789<br>Lot        28 | |
| First Party Name | RODNEY LEE | |
| Second Party Name | FEDERAL NATIONAL MORTGAGE ASSN | |

CONSIDERATION (E) $100.00

MAIL COPY  _____
NO COPY
ENVELOPE  _____

ADDITIONAL STAMPINGS  _____

**Additional Information (Official Use Only)**

***************************** *DO NOT REMOVE THIS PAGE.* *****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY FILING RECORD*
********************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *********************

RECORDED ON
November 20, 2014  01:37 pm
BOOK:12525 PAGE:6583

AC

| No. Of Pages *(excluding Summary Sheet)* | | 8 |
|---|---|---|
| Recording Fee *(excluding Transfer Tax)* | | $110.00 |
| Realty Transfer Tax | | $0.00 |
| Amount Charged          (ACH) | | $110.00 |
| Municipality | NEWARK | |
| Parcel Information | Block          1789<br>Lot          28 | |
| First Party Name | RODNEY LEE | |
| Second Party Name | FEDERAL NATIONAL MORTGAGE ASSN | |

CONSIDERATION (E) $100.00

MAIL COPY _____
NO COPY _____
ENVELOPE _____

ADDITIONAL STAMPINGS _____

**Additional Information (Official Use Only)**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *DO NOT REMOVE THIS PAGE.* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY  FILING RECORD*
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***



CERTIFIED TRUE COPY
DANA RONE
Essex County Register

3/24/2015
Date



**Essex County Register Document Summary Sheet**

| | Transaction Identification Number | 2309575 | 1548902 |
|---|---|---|---|

ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES

HALL OF RECORDS - ROOM 130

465 DR. MARTIN LUTHER KING BLVD

NEWARK NJ 07102

**Return Address** *(for recorded documents)*

TERRA ABSTRACT, INC.

1581 MAIN STREET, SUITE 200

WARRINGTON, PA 18976

| Official Use Only | | |
|---|---|---|
| Submission Date *(mm/dd/yyyy)* | | 11/13/2014 |
| No. of Pages *(excluding Summary Sheet)* | | 8 |
| Recording Fee *(excluding transfer tax)* | | $110.00 |
| Realty Transfer Tax | | $0.00 |
| Total Amount | | $110.00 |
| Document Type | DEED-NO CONSIDERATION | |

**Electronic Recordation Level**

L2 - Level 2 (With Images)

**Municipal Codes**

ESSEX COUNTY                99

**Bar Code(s)**

124115

**Additional Information (Official Use Only)**

* DO NOT REMOVE THIS PAGE.

COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.

RETAIN THIS PAGE FOR FUTURE REFERENCE.

## Essex County Register Document Summary Sheet

| Type | DEED-NO CONSIDERATION | | | | | |
|---|---|---|---|---|---|---|
| Consideration | $100.00 | | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | | |
| Document Date | 10/17/2014 | | | | | |
| Reference Info | | | | | | |
| Book ID | Book | Beginning Page | | Instrument No. | | Recorded/File Date |
| | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DEED-NO CONSIDERATION** | GRANTOR | | Name | | | Address | |
| | | SHERIFF OF THE COUN E ARMANDO B FONTOURA | | | 50 WEST MARKET ST, NEWARK, NJ 07102 | | |
| | GRANTEE | | Name | | | Address | |
| | | FEDERAL NATIONAL MORTAGAGE ASSOCIATION | | | PO BOX 650043, DALLAS, TX 75265 | | |
| | Parcel Info | | | | | | |
| | Property Type | Tax Dist. | Block | Lot | Qualifier | | Municipality |
| | | 99 | 1789 | 28 | | | 99 |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:
TERRA ABSTRACT, INC.
THE SHOPS AT VALLEY SQUARE
1581 MAIN STREET, SUITE 200
WARRINGTON, PA 18976

Deed Prepared By:



Armando B. Fontoura, SHERIFF County
of Essex, State of New Jersey

TO ALL PERSONS TO WHOM THESE PRESENTS SHALL COME, OR WHOM THEY MAY
CONCERN: I, Armando B. Fontoura, Sheriff of the County of Essex, in the State of New Jersey,
send GREETING:

WHEREAS, on December 18, 2013 a certain Writ of Execution was issued out of the Superior Court of
New Jersey, directed and delivered to me Armando B. Fontoura, then and still being Sheriff of the
said County of Essex, and which said Writ is in the words or the effect following— THAT IS TO SAY:

NEW JERSEY TO WIT: THE STATE OF NEW JERSEY TO THE SHERIFF OF THE COUNTY OF
ESSEX: GREETING:

WHEREAS, on December 18, 2013, by a certain judgment made in our Superior Court of New
Jersey, in a certain cause therein depending wherein the plaintiff is:

ONEWEST BANK, FSB

and the following named parties are defendants:

RODNEY LEE; RCL MANAGEMENT; STATE OF NEW JERSEY

it was ordered and adjudged that certain mortgaged premises, with the appurtenances, in the
Complaint, in the said cause particularly set forth and described, that is to say: The mortgaged
premises are described as set forth upon the RIDER ANNEXED HERETO AND MADE A PART
HEREOF.

Together with all and singular and the rights, liberties, privileges, hereditaments and
appurtenances thereunto belonging, or in any wise appertaining, and the reversion and remainders,
rents, issues, and profits thereof, and also all the estate, right, title, interest, use, property, claim and
demand of the said Defendants, of, in, to and out of the same, be sold, to pay and satisfy in the first
place unto the Plaintiff, THE SUM OF $207,228.64, being the principal, interest and advances
secured by a certain mortgage dated May 30, 2007 and given by RODNEY LEE, together with
interest at the contract rate of 7.875% on $163,992.29, being the principal sum in default, including
advances, if any, from March 1, 2013 to December 18, 2013, and lawful interest thereafter on the total
sum due plaintiff until the same be paid and satisfied and also the costs of the aforesaid plaintiff, with
interest thereon.

And that for that purpose an Writ of Execution should issue, directed to the Sheriff of the
County of Essex, commanding him to make sale as aforesaid, and that the surplus money arising from
such sale, if any there be, should be brought into the said Court, subject to the further order of the

Court, as by the said judgment remaining as of record, in our Superior Court of New Jersey, at Trenton, doth and may more fully appear.

AND WHEREAS, the costs of the said Plaintiff have been duly taxed at the following sum: $3,130.95

Therefore, you are hereby commanded, that you cause a sale to be made of the premises aforesaid, by selling so much of the same as may be needful and necessary for the purpose, the said sum of $207,228.64, and the same you do pay to the said Plaintiff together with contract rate and lawful interest thereon as aforesaid, and the sum aforesaid of costs with interest thereon and that you have the surplus money, if any there be, before the said Superior Court of New Jersey, aforesaid, at Trenton, within (30) days after sale. If no sale, Writ returnable within (24) months pursuant to, R.4:59-1(a), to abide the further order of our said Court according to the judgment aforesaid. And you are to make return at the time and place aforesaid, by certificate, under your hand, of the manner in which you shall have executed this our Writ, together with this Writ.

WITNESS, the Honorable PAUL INNES, Judge of the Superior Court at Trenton, aforesaid, December 18, 2013.

STERN & EISENBERG, PC                    MICHELLE M. SMITH, ESQ.
Attorneys for Plaintiff                          Clerk of Superior Court
DOLORES M. DE ALMEIDA

As by the record of the said Writ of Execution in the Office of the Clerk of the Superior Court of New Jersey in Book F13 of Executions, page 012574 may more fully appear.

AND WHEREAS, I, the said Armando B. Fontoura, as such Sheriff as aforesaid, did, in due form of law, advertise, the said lot of land and premises to be sold under and by virtue of the said Writ of Execution, at public auction, to be held at the Essex County Veterans Courthouse, in the City of Newark, on Tuesday August 19, 2014 at one-thirty O'Clock (Prevailing Time) in the afternoon of that day.

By public advertisements signed by myself, and set up at two public places in the said County of Essex, one of which was in the Office of the Sheriff of the County of Essex, and the other where said real estate is situated, of the time and place appointed for such sale, for at least three weeks preceding the time appointed for said sale, and publishing the same in "The Star-Ledger" and "LUSO-AMERICANO" two of the newspapers printed and published in the said State, where the lands above described are situated, the same being designated for the publication by the laws of this State, and circulating in the County of said real estate, for at least once a week during four consecutive calendar weeks, the first publication being at least twenty-one days prior, and the last publication being not more than eight days prior to the time so appointed for selling the same, one of which said newspapers to wit: The Star Ledger is printed and published at Newark, the County seat of said County, at which time and place I did adjourn said sale regularly from week to week until Tuesday 9/16/2014, at the same time and place at which last mentioned time and place I did accordingly offer and expose the said lot of land and premises for sale at public auction under and by virtue of the said Writ of Execution. And Thereupon FEDERAL NATIONAL MORTGAGE ASSOCIATION, P.O. BOX 650043, DALLAS, TX 75265, did bid for the same the sum of $100.00(One Hundred Dollars and Zero Cents), and no other person bidding as much, I did then and there, openly and publicly, in due form of

law between the hours of twelve and five in the afternoon, strike off and sell the said lot of land and premises for the sum of $100.00(One Hundred Dollars and Zero Cents), to the said FEDERAL NATIONAL MORTGAGE ASSOCIATION, being then and there the highest bidder for the same.

NOW, THEREFORE, KNOW YE, That I, the said Armando B. Fontoura, as such Sheriff as aforesaid, under, and by virtue of the said Writ of Execution, and in execution of the power and trust in me reposed and also for, and in consideration of the said sum of $100.00(One Hundred Dollars and Zero Cents); to me in hand, paid, the receipt whereof I do hereby acknowledge, and therefrom acquit, exonerate and forever discharge the said FEDERAL NATIONAL MORTGAGE ASSOCIATION, its successors and assigns, have granted, bargained, sold, assigned, transferred and conveyed, and by these presents do grant, bargain, sell, assign, transfer and convey, unto the said FEDERAL NATIONAL MORTGAGE ASSOCIATION, its successors and assigns, all and singular, the said lot of lands and premises, with the appurtenances, privileges, and hereditaments thereto belonging or in any way appertaining: TO HAVE AND HOLD the same unto the said FEDERAL NATIONAL MORTGAGE ASSOCIATION, its successors and assigns, to its and their only proper use, benefit and behoof forever, in as full, ample and beneficial a manner as by virtue of the said Writ of Execution, I may, can or ought to convey the same.

And I, the said Armando B. Fontoura, for myself, my heirs, executors and administrators, do hereby covenant, promise and agree to and with the said FEDERAL NATIONAL MORTGAGE ASSOCIATION, its successors and assigns, that I have not, as such Sheriff as aforesaid, done or caused, suffered or procured to be done, any act, matter or thing, whereby the estate hereby intended to be conveyed in and to the said lot of land and premises, with the appurtenances, is, may or can be changed, charged, encumbered, or defeated in any manner whatever.

IN WITNESS, WHEREOF, I, the said Armando B. Fontoura, AS SUCH Sheriff as aforesaid, have hereunto set my hand and seal this October 17, 2014, Signed, Sealed and Delivered in the Presence of

MICHAEL J. OLIVEIRA
Attorney at Law, State of New Jersey
NEW JERSEY, ESSEX COUNTY, SS.

Armando B. Fontoura, SHERIFF

I, Armando B. Fontoura, Sheriff of the County aforesaid, do solemnly swear that the land and real estate described in the deed, made by me to FEDERAL NATIONAL MORTGAGE ASSOCIATION, P.O. BOX 650043, DALLAS, TX 75265 was sold by me by virtue of a good and subsisting execution, as is therein recited, that the money ordered to be paid has not been, to my knowledge of belief, paid or satisfied, that the time and place of sale of the said land and real estate was by me duly advertised, as

required by law, and that the same was cried off and sold to a bonafide purchaser for the best price that could be obtained.

Armando B. Fontoura, SHERIFF

Sworn before me, one of the Attorneys at Law of the State of New Jersey, on October 17, 2014 and I having examined the Deed above mentioned, do approve the same and order it to be recorded as a good and sufficient conveyance consideration paid for the transfer of title to reality evidenced by within deed, as such consideration is defined in P.L. 1968, c. 49, Sec. 1 (c), is $100.00 (One Hundred Dollars and Zero Cents).

Prepared by Armando B. Fontoura, Sheriff of the County of Essex, State of New Jersey.

Armando B. Fontoura, SHERIFF

MICHAEL J. OLIVEIRA
Attorney at Law, State of NJ



ORIGINAL IN DUPLICATE

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**
(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.

**STATE OF NEW JERSEY**

| | | FOR RECORDER'S USE ONLY |
|---|---|---|
| | SS. County Municipal Code | Consideration $ |
| **COUNTY** Camden | 0 2 1 F | RTF paid by seller $ |
| | | Date By |

MUNICIPALITY OF PROPERTY LOCATION City of Newark          *Use symbol "C" to indicate that fee is exclusively for county use.

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3 and #4 on reverse side)

Deponent, Christopher M. Camporeale       being   duly   sworn   according   to   law   upon   his/her   oath,
(Name)
deposes and says that he/she is the Legal Representative          in a deed dated October 17, 2014          transferring
(Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.)

real property identified as Block number 1789          Lot number 28          located at

561 South Orange Avenue, Newark, NJ 07108          and   annexed   thereto.
(Street Address, Town)

**(2) CONSIDERATION** $          100.00 (Instructions #1 and #5 on reverse side) ☒ no prior mortgage to which property is subject.

(3) Property transferred is Class 4A   4B   4C (circle one). If property transferred is Class 4A, calculation in Section 3A below is required.

**(3A)REQUIRED CALCULATION OF EQUALIZED VALUATION FOR ALL CLASS 4A (COMMERCIAL) PROPERTY TRANSACTIONS:**
(See Instructions #5A and #7 on reverse side)
Total Assessed Valuation ÷ Director's Ratio = Equalized Assessed Valuation

$          ÷          % = $
If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed value. If Director's Ratio is equal to or in excess of 100%, the assessed value will be equal to the equalized valuation.

**(4) FULL EXEMPTION FROM FEE** (See Instruction #8 on reverse side)
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.
Transfer is to Federal National Mortgage Association and is exempt.

**(5) PARTIAL EXEMPTION FROM FEE** ( Instruction #9 on reverse side)
NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. Deponent claims that this deed transaction is exempt from State portions of the Basic, Supplemental, and General Purpose Fees, as applicable, imposed by C. 176, P.L. 1975, C. 113, P.L. 2004, and C. 66, P.L. 2004 for the following reason(s).

A.   **SENIOR CITIZEN**   Grantor(s) ☐ 62 years of age or over. * ( Instruction #9 on reverse side for A or B)
B.   { **BLIND PERSON**   Grantor(s) ☐ legally blind or; *
       **DISABLED PERSON** Grantor(s) ☐ permanently and totally disabled ☐ receiving disability payments ☐ not gainfully employed*

Senior citizens, blind persons, or disabled persons must also meet all of the following criteria:
☐ Owned and occupied by grantor(s) at time of sale.      ☐ Resident of State of New Jersey.
☐ One or two-family residential premises.              ☐ Owners as joint tenants must all qualify.

*IN CASE OF HUSBAND AND WIFE, PARTNERS IN A CIVIL UNION COUPLE, ONLY ONE GRANTOR NEED QUALIFY IF TENANTS BY THE ENTIRETY.

C.   **LOW AND MODERATE INCOME HOUSING** (Instruction #9 on reverse side)
☐ Affordable according to H.U.D. standards.      ☐ Reserved for occupancy.
☐ Meets income requirements of region.           ☐ Subject to resale controls.

**(6) NEW CONSTRUCTION** (Instructions #2, #10 and #12 on reverse side)
☐ Entirely new improvement.                     ☐ Not previously occupied.
☐ Not previously used for any purpose.          ☐ "NEW CONSTRUCTION" printed clearly at top of first page of the deed.

**(7) RELATED LEGAL ENTITIES TO LEGAL ENTITIES** (Instructions #5, #12, #14 on reverse side)
☐ No prior mortgage assumed or to which property is subject at time of sale.
☐ No contributions to capital by either grantor or grantee legal entity.
☐ No stock or money exchanged by or between grantor or grantee legal entities.

**(8)** Deponent makes this Affidavit to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me
this 17th day of November 20 14          Signature of Deponent          Rodney Lee
                                                                          Grantor Name
[signature]                                    1040 N. Kings Highway        561 South Orange Avenue
                                               Cherry Hill, NJ 08034        Newark, NJ 07108

**DEBORAH D. CHANEY**                          Deponent Address              Grantor Address at Time of Sale
NOTARY PUBLIC
STATE OF NEW JERSEY                            XXX-XXX-   783                Stern & Eisenberg, PC
My Commission Expires March 16, 2016          Last three digits in Grantor's Social Security Number   Name/Company of Settlement Officer
ID# 2405588

| FOR OFFICIAL USE ONLY | County |
|---|---|
| Instrument Number | |
| Deed Number | Book Page |
| Deed Dated | Date Recorded |

County recording officers shall forward one copy of each RTF-1 form when Section 3A is completed to:   **STATE OF NEW JERSEY**
                                                                                                         PO BOX 251
                                                                                                         TRENTON, NJ 08695-0251
                                                                                                         ATTENTION: REALTY TRANSFER FEE UNIT

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and may not be altered or amended without prior approval of the Director. For information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division of Taxation website at:
www.state.nj.us/treasury/taxation/ptiforsellnc.htm

## SCHEDULE "A"

All that certain tract or parcel of land and premises situate, lying and being in the CITY of NEWARK, County of ESSEX and State of New Jersey.

Also known as Tax Lot 28 in Block 1789 on the Tax Assessment map of the CITY of NEWARK.

More commonly known as 551 SOUTH ORANGE AVE, NEWARK, NJ, 07106.

### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Newark, County of Essex, State of New Jersey:

BEGINNING at a point in the northeasterly line of South Orange Avenue, therein distant 167.64 feet as measured northwesterly along the same from its intersection with the northwesterly line of South 20th Street, and from said point of Beginning, thence running;

(1) along the northeasterly line of South Orange Avenue, North 60 degrees 42 minutes 00 seconds West, a distance of 25.00 feet to a point; thence

(2) North 29 degrees 18 minutes 00 seconds East, a distance of 100.00 feet to a point; thence

(3) South 60 degrees 42 minutes 00 seconds East, a distance of 25.00 feet to a point; thence

(4) South 29 degrees 18 minutes 00 seconds West, a distance of 100.00 feet to a point in the northeasterly line of South Orange Avenue and place of BEGINNING.

NOTE: Being Lot(s)  Lot 28, Block 1789;  Tax Map of the City of Newark, County of Essex, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

RTF-8 (Rev. 3-98)

### STATE OF NEW JERSEY
### AFFIDAVIT OF CONSIDERATION
(STATEMENT OF PRIOR MORTGAGE, LIENS OR ENCUMBRANCES)
FOR
SHERIFF'S DEEDS
(c. 225, P.L. 1979)
To Be Recorded With Deed Pursuant to c. 49 P.L. 1968, as amended, and c. 225, P.L. 1979

STATE OF NEW JERSEY
⎫
⎬ ss.
⎭
COUNTY OF Camden

| FOR RECORDER'S USE ONLY |
| Consideration $ _____ . Realty Transfer Fee $ _____ |
| Date _____ By _____ |

**IMPORTANT NOTES:**
   This form is to be attached to all Sheriff's Deed not otherwise exempt pursuant to N.J.S.A 46:15-10, when presented to the County Clerk or Register of Deed's for recording.  One of the following blocks MUST be checked:

   ☒   NO PRIOR MORTGAGES OR LIENS ARE OUTSTANDING.

   ☐   PRIOR MORTGAGE OR LIENS OUTSTANDING AND NOT EXTINGUISHING BY THE SALE ARE AS LISTED IN SECTION 2 BELOW.

(1)  PARTY OR LEGAL REPRESENTATIVE

_____
*(Plaintiff)*

**Stern & Eisenberg, P.C.**
_____
*(Legal Representative of Plaintiff)*

("Legal representative is to interpreted broadly to include any person actively and responsibly participating in the transaction, such as but not limited to: an attorney representing one of the parties; a closing officer of a title company of lending institution participating in transaction; a holder of power of attorney from plaintiff.)

(2)  CONSIDERATION
   Deponent states that, with respect to deed hereto annexed, there follows the name or names of all mortgagees and other holders of encumbrances constituting "consideration" as defined in the act to which this act is a supplement (C. 46:15-5(c)), to which such sale shall be subject.  Such prior mortgages, liens and encumbrances are as follows:

| NAME OF SECURED PARTY | CURRENT AMOUNT DUE |
|---|---|
| Subject to outstanding mortgage, taxes and/or municipal liens | $ 0.00 . _____ |
| | |
| | |
| | |
| | |
| **TOTAL** | $0.00 |

NOTE:   The amount of consideration on which the Realty Transfer Fee shall be calculated shall include both the total listed above and the amount bid at the sale as set forth in the Sheriff's Deed.

   Deponent makes affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968, as amended, and c. 225, P.L. 1979.

Subscribed and Sworn to before me

NICOLE HERMAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 2/26/2018

this  21st

Day of  May  , 2014

_____
Name of Deponent

1040 N. Kings Highway, Suite 407
Cherry Hill, NJ 08034
Address of Deponent

*Nicole Herman*

| AMOUNT BID AT SHERIFF SALE | FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds |
|---|---|
| | Instrument Number_____ County_____ |
| | Deed Number_____ Block_____ Page_____ |
| $ 100.00 | Deed Dated_____ Date Recorded_____ |

IMPORTANT – BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE FOLLOWING PAGE.
   *          *          *          *          *

This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.

ORIGINAL  to be attached to Sheriff's Deed.
COPY        to be retained by Sheriff Deed.



# Office of the Sheriff
## ARMANDO B. FONTOURA, SHERIFF
Essex County Veteran's Courthouse
Newark, New Jersey 07102
(973) 621-2848
Fax (973) 623-9599
www.essexsheriff.com

UNDERSHERIFFS
Jesus A. Padilla
James W. Pitts
Kevin J. Ryan

CHIEF
John D. Dough

DEED

Armando B. Fontoura

SHERIFF

TO

FEDERAL NATIONAL MORTGAGE ASSOCIATION

SHERIFF'S FILE NO. 14004077

Consideration $100.00

Dated 10/17/2014

 GSMLS

http://mls.gsmls.com/mlsreports/mainListingReport.do;jsession...

| Essex* Newark City* (1614) | 551 S Orange Ave* | | List Price: $25,500 |
|---|---|---|---|

**Residential Agent Complete Report**

| | | | | | |
|---|---|---|---|---|---|
| | MLS#: | 3278498 | Section: | | LP: $25,500 |
| | Status: | S | ZN: | | OLP: $25,500 |
| | Rms: | 7 | GRS: | | SP: $25,100 |
| | Bdrm: | 3 | MSJR: | | LD: 01/28/2016 |
| | FB: | 1 | HS: | | XD: 04/25/2016 |
| | HB: | 1 | Acres: | 0.06* | UCD: 03/10/2016 |
| | ZIP: | 07103-1340* | LtSz: | 25X100* | ACD: 04/15/2016 |
| | RZIP: | 07103 | SqFt: | | CD: 04/15/2016 |
| | Block: | 1789* | CLR: | | ADM: 41 |
| | Lot: | 28* | CL: | No | DOM: 42 |
| | Unit #: | | GSMLS.com: | Yes | Terms: Cash |
| | Floor #: | | YB/Desc/Ren: | 1920 / Approximate / | SDA: |
| | Bldg #: | | PSubType: | Single Family | |
| | FHA55+: | No | Style: | Colonial | |
| | Pets: | No | | | |

Directions: **Below Grove Street**
Remarks: **Colonial w/ 3 Bedrooms. Large yard. Sheetrock walls with 1.5 CTb. Open living room/dining room combo and centrally located with easy access to local shopping and major highways. On bus route. This is a homepath property.**
Agent Remarks: **24 Hour Notice. Email Listing Agent Manuel Couto at Mcouto@iname.com. Seller has directed all offers be submitted via www.HomePath.com**

### INTERIOR

| | |
|---|---|
| ApplIncs: **See Remarks** | Handicap Modified: |
| Bsmnt: **Yes / Full, Unfinished** | IntFeat: |
| Dine: | Kitch: **Eat-In Kitchen** |
| Exclu: | MastBr: |
| FirePl: **0 /** | MstBath: |
| Floor: | P-Use: |
| | In-law Suite: **/** |

### EXTERIOR / OTHER FEATURES

| | |
|---|---|
| Amnt: | Garage: **0 / None** |
| Drive: **0 / None** | LotDesc: |
| Exterior: **Vinyl Siding** | Pool: **No/** |
| ExtFeat: | Roof: **Flat** |

### ROOM DIMENSIONS

| | | | |
|---|---|---|---|
| LivRm: **/ First** | DinRm: **/ First** | Kitch: **/ First** | Den: **/** | FamRm: **/** |
| Mstr: **/ Second** | Bed2: **/ Second** | Bed3: **/ Second** | Bed4: **/** | |
| Office: **/Second** | **: /** | **: /** | **: /** | |
| LevelB: | | | | |
| LevelG: | | | | |
| Level1: **Bath(s) Other, Dining Room, Kitchen, Living Room** | | | | |
| Level2: **3 Bedrooms, Bath Main** | | | | |
| Level3: | | | | |
| OthLev: | | | | |

### UTILITIES

| | |
|---|---|
| Heat: **No Heat** | Sewer: **Public Sewer** |
| Cool: **See Remarks** | Utilities: **Gas-Natural** |
| Fuel: **None** | Water: **Public Water** |
| Service: | WtrHt: |

### FINANCIAL INFORMATION / TAX INFORMATION

| | | | | |
|---|---|---|---|---|
| Taxes: **$3,021 / 2015** | TaxRt: **3.309 / 2015** | BldAsmt: **$74,100** | LndAsmt: **$17,200** | TotAsmt: **$91,300** |
| Fee: **$ /** | AppFee: **$** | FarmAsmt: | HmWrnty: | OTP: **Fee Simple** |
| Other: **$ /** | Easement: **Unknown /** | LenderAprvReq: **No** | | |
| FeeIncl: | | | | |

### SHOWING INFORMATION

| | |
|---|---|
| MgmtNm: | MgmtPh: |
| Owner: **FEDERAL NATIONAL MOR,*** | OwnerPh: |
| Instr: **24 Hour Notice. Email Listing Agent Manuel Couto at Mcouto@iname.com. Seller has directed all offers be submitted via HomePath.com** | Posses: **Closing** |
| Show: **By Appoint-24 Hour Notice, See Showing Instructions** | Sign **Yes** |

### LISTING OFFICE INFORMATION

| | | |
|---|---|---|
| ListOff: **NENO-ROSA AGENCY   (0695)** | Ph: **201-997-7860** | Fax: **201-997-6213** |
| ListAgt1: **MANUEL COUTO   (233230)** | Ph: **201-997-7860 x16** | Fax: **201-591-7854** |
| BB: **3%** | SA: **0** | TB: **3%** |
| LType: **Exclusive Right to Sell** | BREL: **Seller Agent** | VarComm: |

### SELLING OFFICE INFORMATION

| | | |
|---|---|---|
| SellOff: **NENO-ROSA AGENCY   (0695)** | Ph: **201-997-7860** | Fax: **201-997-6213** |
| SellAgt1: **STEVEN LARTIGA   (280958)** | Ph: **201-463-9758** | Fax: **201-997-6213** |

Copyright, Garden State MLS, L.L.C.          **Info. deemed RELIABLE but not GUARANTEED - ALL Room Sizes are Approx.**          LESTER JOHNSON